**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| KEVIN WELSH, <br><br> Plaintiff, <br><br> v. <br><br> HOMOLOGY MEDICINES, INC., ARTHUR TZIANABOS, MATTHEW PATTERSON, JEFFREY POULTON, ALISE REICIN, STEVEN GILLIS, and MARY THISTLE, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Kevin Welsh ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Homology Medicines, Inc. ("Homology" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed merger of the Company with Q32 Bio Inc. ("Q32").[1]

2. On November 16, 2023, Homology, the Company's wholly-owned subsidiary Kenobi Merger Sub, Inc., and Q32 entered into an Agreement and Plan of Merger (the "Merger

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Agreement"). with Q32 common stock converted into the right to receive a number of shares of Homology common stock equal to the total number of shares of Homology common stock to be issued in the Proposed Transaction multiplied by the applicable Q32 stockholder's percentage interest in Q32 as set forth in the allocation certificate to be provided by Q32 (the "Allocation Certificate"). In connection with the closing of the Proposed Transactions, Homology's current stockholders will also be issued a contingent value right ("CVR") representing the right to receive certain payments from proceeds received by the combined company, if any, related to dispositions of Homology's pre-transaction legacy assets.[2]

3.     Notably, the Merger Agreement requires the Company to issue additional shares of its common stock (the "Share Issuance") to effect the Proposed Transaction. As a Nasdaq listed company, applicable listing rules require Homology is to secure stockholder approval before issuing twenty percent or more of its outstanding common stock. The Proposed Transaction is therefore contingent on Company stockholders approving the Share Issuance.

4.     The Company's corporate directors subsequently authorized the February 14, 2024, filing of a materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. The Prospectus, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

---

[2] Homology stockholders will own approximately twenty-five percent of the combined company upon consummation of the Proposed Transaction (subject to certain assumptions, including, including the Company's net cash as of closing being equal to $60.0 million and Q32 issuing approximately $42.0 million of Q32 common stock in a pre-closing financing).

5. It is imperative that the material information omitted from the Prospectus is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[3]

6. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

8. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

10. Plaintiff is, and is and has been at all times relevant hereto, the owner of

---

[3] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for March 15, 2024.

Homology common stock.

11.     Defendant Homology is a Delaware corporation with its principal executive offices located at One Patriots Park, Bedford, Massachusetts 01730.  Homology's shares trade on the Nasdaq Global Select Market under the ticker symbol "FIXX."  Homology has been a clinical stage genetic medicines company, historically focused on transforming the lives of patients suffering from rare genetic diseases.  The Company focused its business on its proprietary platform designed to utilize its human hematopoietic stem cell-derived adeno-associated virus vectors ("AAVHSCs") to precisely and effectively deliver single-administration genetic medicines *in vivo* through a nuclease-free gene editing modality, gene therapy, or gene therapy to express antibodies platform ("GTx-mAb") which is designed to produce antibodies throughout the body.  Homology's former clinical programs include: (i) HMI-103, an investigational gene editing candidate for the treatment of patients with phenylketonuria ("PKU"); (ii) HMI-203, an investigational gene therapy candidate for the treatment of patients with mucopolysaccharidosis type II, also known as Hunter syndrome; and (ii) HMI-102, an investigational gene therapy candidate for the treatment of adult patients with PKU.  Homology's former preclinical programs include: (i) HMI-104, a GTx-mAb gene therapy candidate for the treatment of patients with paroxysmal nocturnal hemoglobinuriaand; and (ii) HMI-204, a gene therapy candidate for metachromatic leukodystrophy.  In July 2023, Homology announced that it was stopping further development of its programs based on the financing environment and Homology's anticipated clinical development timeline for its lead program, HMI-103.

12.     Defendant Arthur Tzianabos is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

13. Defendant Matthew Patterson is and has been a director of the Company at all times relevant hereto.

14. Defendant Jeffrey Poulton is and has been a director of the Company at all times relevant hereto.

15. Defendant Alise Reicin is and has been a director of the Company at all times relevant hereto.

16. Defendant Steven Gillis is and has been a director of the Company at all times relevant hereto.

17. Defendant Mary Thistle is and has been a director of the Company at all times relevant hereto.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

19. On November 16, 2023, the Company and Q32 announced in relevant part:

WALTHAM, Mass. and BEDFORD, Mass., Nov. 16, 2023 /PRNewswire/ -- Q32 Bio Inc., a clinical stage biotechnology company developing biologic therapeutics to restore immune homeostasis, and Homology Medicines, Inc. (Nasdaq: **FIXX**), today announced they have entered into a definitive merger agreement to combine the companies in an all-stock transaction. The combined company will focus on advancing Q32 Bio's wholly owned clinical development candidates for the treatment of autoimmune and inflammatory diseases. Upon completion of the merger, the combined company will operate as Q32 Bio, headquartered in Waltham, Massachusetts, and is expected to trade under the Nasdaq ticker symbol "QTTB".

In support of the merger agreement, Q32 Bio has entered into an agreement for a $42 million private placement with participation from existing and new investors including OrbiMed, Atlas Venture, Abingworth, Bristol Myers Squibb, Acorn Bioventures, Osage University Partners (OUP), CU Healthcare

Innovation Fund, Sanofi Ventures, Agent Capital and other undisclosed investors.

"The proposed merger with Homology Medicines and concurrent private placement is expected to provide Q32 Bio with the capital to drive development of our autoimmune and inflammatory pipeline through multiple clinical milestones," said Jodie Morrison, Chief Executive Officer of Q32 Bio. "This funding is expected to enable us to deliver two Phase 2 readouts for bempikibart in the second half of 2024, proof-of-concept data for ADX-097, a tissue-targeted inhibitor of complement activation, by year-end 2024, and topline ADX-097 clinical results in the second half of 2025."

"Following a comprehensive assessment of our strategic options, management and the Board of Directors believe the merger with Q32 Bio is in the best interest of our shareholders," said Albert Seymour, President and Chief Executive Officer of Homology Medicines. "The Q32 Bio management team's extensive track record, deep biopharmaceutical expertise and the potential of its clinical development pipeline provide a compelling opportunity to deliver meaningful treatments to patients with critical unmet needs."

Proceeds from the proposed transactions will be used to advance the clinical development of Q32 Bio's two wholly owned assets, bempikibart (ADX-914), for which Q32 Bio earlier today announced it **regained** all rights from Amgen, and ADX-097.

Bempikibart, Q32 Bio's lead program, is a fully human anti-IL-7Rα antibody that re-regulates adaptive immune function by blocking signaling mediated by both IL-7 and TSLP and is currently being evaluated in two Phase 2 trials, with one clinical trial evaluating the use in atopic dermatitis (AD) and one evaluating the use in alopecia areata (AA). All data from the Phase 2 trials remain blinded and Q32 Bio remains on track to report topline Phase 2 results in the second half of 2024.

ADX-097 is based on a novel platform enabling tissue-targeted regulation of the complement system without long-term systemic blockade, a key differentiator from current complement therapeutics. Q32 Bio recently completed a first-in-human, Phase 1 ascending dose clinical study of ADX-097 in healthy volunteers. Results from the Phase 1 clinical trial demonstrated a favorable tolerability and immunogenicity profile across all single and multiple dose cohorts and weekly subcutaneous dosing met exposures for predicted complete complement inhibition in the tissue with no systemic inhibition. Q32 Bio will be commencing an open-label Phase 2 basket clinical trial, with initial data expected by year-end 2024, and a Phase 2 clinical trial in ANCA-Associated Vasculitis (AAV), with topline results from the AAV and basket trials expected in the second half of 2025.

**About the Proposed Merger**

Under the terms of the merger agreement, Homology Medicines will issue to pre-merger Q32 Bio stockholders shares of Homology Medicines common stock as merger consideration in exchange for the cancellation of shares of capital stock of Q32 Bio, and Q32 Bio will become a wholly owned subsidiary of Homology Medicines. Stockholders of Q32 Bio will receive newly issued shares of Homology Medicines common stock pursuant to a formula set forth in the merger agreement. Pre-merger Homology Medicines stockholders are expected to own approximately 25% of the combined company and pre-merger Q32 Bio stockholders (including those purchasing Q32 Bio shares in the concurrent private financing discussed above) are expected to own approximately 75% of the combined company. The percentage of the combined company that pre-merger Q32 Bio stockholders and pre-merger Homology Medicines will own upon the closing of the merger is further subject to adjustment based on the amount of Homology Medicine's net cash at the time of closing. In connection with the closing of the proposed transactions, Homology Medicines stockholders will also be issued a contingent value right (CVR) representing the right to receive certain payments from proceeds received by the combined company, if any, related to dispositions of Homology Medicines' pre-transaction legacy assets.

Homology Medicines has discontinued development of its R&D programs, including HMI-103 for the treatment of PKU, and has been exploring strategic alternatives for its programs and platform technology. If Homology Medicines has not otherwise disposed of its ownership position in Oxford Biomedica Solutions, LLC (Oxford Solutions), a contract development and manufacturing organization (CDMO) jointly established by Homology Medicines and Oxford Biomedica plc, and monetized its development programs, including HMI-103 for the treatment of PKU, Homology Medicines stockholders of record will be issued a CVR for each outstanding share of Homology Medicines common stock held by such Homology Medicines stockholder prior to the closing of the proposed merger. The CVR would represent the right to receive certain cash payments from proceeds received by Homology Medicines related to the sale or license of its development programs and platform technology and the exercise of a put/call option or other sale or disposition of Homology Medicines' minority ownership position in Oxford Solutions.

The merger agreement has been approved by the boards of directors of both companies. Additional information about the transaction will be provided in a Current Report on Form 8-K that will be filed by Homology Medicines with the Securities and Exchange Commission (SEC) and will be available at **www.sec.gov**.

Cowen Partners is serving as the exclusive financial advisor to Q32 Bio. Cowen Partners and Piper Sandler are serving as placement agents for Q32 Bio's planned private placement. Goodwin Procter LLP is serving as legal counsel to Q32 Bio. TD Cowen is serving as the exclusive financial advisor and Latham & Watkins LLP is serving as legal counsel to Homology Medicines.

Management and Organization

Upon closing of the proposed transaction, the combined company will be led by current members of the Q32 Bio leadership team including:

- Jodie Morrison, Chief Executive Officer
- Shelia Violette, PhD, Founder & Chief Scientific Officer
- Jason Campagna, MD, PhD, Chief Medical Officer
- Saul Fink, PhD, Chief Technology Officer
- Maria Marzilli, MPH, Executive Vice President, Corporate Strategy & Program Operations
- David Appugliese, JD, Senior Vice President, Head of People

The Board of Directors of the combined company is expected to be comprised of nine members, consisting of seven members designated by Q32 Bio and two members designated by Homology Medicines. The transaction has been approved by the Board of Directors of each company and is expected to close in the first quarter of 2024, subject to customary closing conditions, including the approval of the transaction by the stockholders of each company.

**The Materially Incomplete and Misleading Prospectus**

20. The Board caused to be filed the materially incomplete and misleading Prospectus with the SEC on February 15, 2024. The Prospectus, which recommends that Homology stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Q32 and the Company; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor Cowen and Company, LLC ("Cowen").

*Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for Q32 and the Company*

21. The Prospectus fails to disclose material information concerning the financial

forecasts for Q32 and the Company.

22. As to the "Q32 November 9 Financial Model," the Prospectus fails to disclose: (a) Unlevered Free Cash Flow over the projection period and the underlying line items; and (b) all line items underlying the calculation of Q32's (i) Total Revenue, (ii) Gross Profit, and (ii) EBIT.

23. The Prospectus similarly fails to disclose all line items underlying Q32's forecasted: (a) Total Adjusted Revenue; (b) Gross Profit; (c) EBIT; (d) NOPAT; and (e) Unlevered Free Cash Flow, each with respect to the "Homology Adjusted Q32 Projections."

24. Moreover, according to the Prospectus, "[o]n October 12, 2023, representatives of Q32 delivered to representatives of TD Cowen an initial draft of Q32's consolidated financial model, or the October 12 Financial Model, including Q32's anticipated expenses."[4] The Prospectus, however, fails to disclose the October 12 Financial Model or the changes to the October 12 Financial Model to arrive at the Q32 November 9 Financial Model that is summarized in the Prospectus.

25. The Prospectus also fails to disclose any financial forecasts for the Company, notwithstanding the statement that, "[b]ased upon its **current projections**, Homology believes that its existing cash, cash equivalents, and short-term investments will enable it to continue to fund its operations for at least one year from the date its unaudited consolidated financial statements for the period ended September 30, 2023[.]"[5]

26. The Prospectus also fails to disclose a summary of any liquidation analyses for the Company performed by Homology management.

---

[4] Prospectus at 162.

[5] *Id.* at 48.

9

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Leerink*

27. The Prospectus fails to disclose material information concerning the financial analyses prepared by Leerink.

28. As to the *Discounted Cash Flow Analysis* of Q32 performed by Cowen, the Prospectus fails to disclose Q32's terminal values.

29. As to the *Selected Publicly Traded Companies Analysis* of Q32 performed by Cowen, the Prospectus fails to disclose the respective financial metrics and any individual multiples for each selected company.

30. The omission of the above-referenced information renders statements in the "Certain Unaudited Financial Projections for Q32" and "Opinion of Homology's Financial Advisor" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act.

31. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Homology**

32. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

33. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Homology is liable as the issuer of these statements.

34. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

35. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

37. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

38. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

39. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

40. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of Homology within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Homology and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

43. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

44. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  February 22, 2024               **LONG LAW, LLC**

                                        By:  */s/ Brian D. Long*
                                             Brian D. Long (#4347)
                                             3828 Kennett Pike, Suite 208
                                             Wilmington, DE 19807
                                             Telephone: (302) 729-9100
                                             Email: BDLong@LongLawDE.com

                                        *Attorneys for Plaintiff*